SUHRHEINRICH, Circuit Judge,
dissenting.
The majority holds that Officer Duggan lacked reasonable suspicion of criminal ac *149 tivity to detain Defendant Kelvin Johnson after a routine and undisputedly constitutional traffic stop. As I believe that the totality of the circumstances permitted Officer Duggan to detain Johnson and search his rental vehicle, I would affirm the district court’s denial of Johnson’s motion to suppress the stolen gun found under the passenger seat. Accordingly, I must respectfully dissent.
The magistrate judge, whose Report and Recommendations the district court adopted in its decision denying Johnson’s motion to suppress, found that Officer Duggan had articulated an objectively reasonable suspicion of criminal activity based on the following factors:
(1) defendant appeared excessively nervous-far too nervous for normal traffic stop jitters. He had begun to sweat, his hands were shaking, he stared intensely at Officer Duggan;
(2) defendant stood in a “bladed” stance indicating to Officer Duggan, based on his training, that defendant was in a fight or flight mode;
(3) defendant said he was going to see a woman he had never met for several days, but he had no luggage, only a few packs of new underwear and T-shirts;
(4) he was carrying heavy duty industrial degreaser in a car he had rented to go visit a woman. Duggan testified that such cleaner could be used to wipe finger prints;
(5) the rental paperwork for the car limited the car’s geographical range to Georgia and Florida, but the defendant was driving in Tennessee en route to Kentucky; and
(6)the defendant had multiple arrests on [felony weapons and] narcotics charges.
United States v. Johnson, No. 1:09-cr-179, 2010 WL 2901852, at *5 (E.D.Tenn. May 19, 2010). The majority acknowledges that to varying degrees, all but one of these factors had a role in Officer Dug-gan’s reasonable suspicion analysis.[18] In lieu of considering the reasonableness of the suspicion created by the factors in combination, as the totality of the circumstances test obliges us to do, however, it disassembles each factor individually. In so doing, it concludes that every one could have been entirely innocent. See, e.g., Majority Op. at 145^46 (nervous behaviors during a traffic stop are commonplace); id. at 146^47 (explanation for paucity of luggage was believable); id. at 148 (past crimes are not highly probative of present criminality); id. at 148 (Johnson could have used the degreaser to work on cars); id. at 148 (failure to abide by the terms of the rental car contract does not suggest wrongdoing or theft). Finally, it concludes that together, these independently unremarkable circumstances could lead Officer Duggan to nothing more than a “hunch” that criminal activity was afoot — an insufficient level of reasonable suspicion to detain Johnson. I disagree with the majority’s analysis, for two principal reasons.
First, by focusing on the identified factors individually, and only nominally considering their collective impact, the majority has misapplied the totality of the circumstances test applicable to our reasonable-suspicion analysis.
As the majority correctly observes, “[o]nee the purpose of the traffic stop is *150 completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot.” Hill, 195 F.3d at 264 (internal citations omitted). Whether such reasonable suspicion exists depends not on the individually presented characteristics of the stop, but on “the totality of the circumstances presented to the officer.” Jones, 673 F.3d at 502. What is more, “[p]olice officers are permitted to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them ... ” — inferences that “might well elude an untrained person.” Shank, 543 F.3d at 315 (internal quotation marks and citation omitted). In my view, the majority’s analysis side-steps these important principles. It concludes that individually weak factors are necessarily weak in combination, without assessing whether the coincidence of multiple factors impacts their strength in the reasonable-suspicion analysis. In other words, while the majority purports to apply a totality of the circumstances test, it does not.
One example should illustrate. In its opinion, the majority acknowledges that Johnson had industrial strength degreaser in his backseat, which it agrees “ha[s] a number of unsavory uses,” including wiping fingerprints off of a stolen weapon or cleaning drug residue from a car. It also acknowledges that Officer Duggan knew Johnson had been convicted on narcotics and stolen weapon charges in the past, a factor it accepts as somewhat probative in the reasonable-suspicion analysis. As if wearing blinders, however, the majority focuses on both of these elements individually, ultimately finding them weak indicia of Johnson’s criminality and insufficient bases for Officer Duggan’s purported suspicion. It altogether fails to consider, as the totality of the circumstances test would have it do, whether the possession of industrial strength degreaser is any more suspicious when it is in the possession of someone who would know how to use it for its “unsavory” purposes, or whether Johnson’s criminal history is any more relevant to his present criminality given his possession of an instrument very likely to aid him in the commission of the same crimes of which he had been previously convicted. In essence, the majority disregards its own directive that the factors presented to Officer Duggan must be considered collectively, rather than in isolation.
Second, given the totality of the circumstances presented during Johnson’s traffic stop, I disagree with the majority’s conclusion that Officer Duggan did not have an articulable and reasonable suspicion that criminal activity was afoot when he made the decision to further detain Johnson.
Although precedent is not always especially applicable in our particularized and fact-driven reasonable-suspicion analysis, see Townsend, 305 F.3d at 542, there is striking congruence between United States v. Hill and the instant case. As the majority notes, Hill held that reasonable suspicion existed for officers to continue to detain the defendant after an authorized traffic stop based primarily on the defendants’ nervous demeanor, suspicious travel story, and the presence of large amounts of Kleenex in their truck, which the officers knew to be consumed in large quantities by cocaine users. See Hill, 195 F.3d at 270-73. Similarly, in this case, Johnson was displaying nervous behaviors and had an awkward travel account. See Majority Op. at 144-46 (“His travel account was awkward in that he had taken no luggage to meet a new female.”) (citing R. 35 at 26-27). Johnson’s possession of industrial strength degreaser was the same as the Hill defendants’ possession of Kleenex, as *151 well, in that both goods appeared superficially innocent to an untrained observer, but indicative of an ongoing crime to a trained law enforcement officer. Indeed, the only real difference between Hill and the instant case is that where the officers in Hill predominantly relied upon the interplay of the aforementioned factors to develop their objectively reasonable suspicion of criminal activity, Officer Duggan relied on the collection of these factors, plus more. See Johnson, 2010 WL 2901852, at *5 (listing additional factors relied upon by Officer Duggan, including, inter alia, Johnson’s criminal history and violation of his rental car contract). Thus, if anything, the case for reasonable suspicion in stronger here.
Taken together, I would conclude that the totality of the circumstances at the time Officer Duggan decided to further detain Johnson created a objectively reasonable suspicion that criminal activity was afoot. Although not necessarily illegal, the fact that Johnson was driving his rental car in states prohibited by his rental car contract was certainly improper and might reasonably have aroused suspicion. See Branch, 537 F.3d at 588. This, in combination with Johnson’s story about having a commitment to spend multiple days with a woman he had never met — while carrying nothing more than unopened packages of underwear and white t-shirts — is odd, indeed. The majority points out that nervousness, alone, is too commonplace to be considered highly probative in the reasonable-suspicion analysis. Majority Op. at 145-46. I agree. An agitated everyday motorist, however, is quite different from a convicted felon who becomes nervous when he is pulled over with industrial strength degreaser in his car.
While of course it is possible that all of these unusual circumstances were coincidental and entirely innocent, “[t]he process [of determining reasonable suspicion] does not deal with hard certainties, but with probabilities.” Cortez, 449 U.S. at 418, 101 S.Ct. 690. And, while we must ourselves analyze whether an officer’s suspicion of criminal activity was reasonable, we do so in recognition of the fact that law enforcement officers are trained to make deductions from circumstances presented in the course of duty, while we are not. See, e.g., id.; Shank, 543 F.3d at 315 (finding that the special training and experience of police officers permits them to draw “inferences from and deductions about the cumulative information available to them that might well elude an untrained person.”). Officer Duggan, who at the time of Johnson’s stop and detention had “approximately three hundred hours of interdiction training in traffic enforcement, interviewing persons, and interpreting criminal behavior,” testified that Johnson’s possession of degreaser was “very rare, very unusual ... [and] not consistent with the innocent motoring public ...” and that “[a]ll of the[] [circumstances presented] escalated [his] suspicion” and made him “believe that there was something more than just a traffic violation occurring.” Johnson, 2010 WL 2901852, at *1; R.35 at 26-27, 58. The magistrate judge credited Officer Duggan’s deductions and the district court adopted the magistrate’s Report and Recommendations. Reviewing its conclusions de novo but according “due weight” to the district court, which had the institutional advantage of hearing Officer Duggan testify, I would affirm. See Townsend, 305 F.3d at 542 (holding that “due weight” should be given to the inferences draw by the facts presented to the district court judge, who is at an institutional advantage in deciding whether reasonable suspicion existed).
Because I believe that the totality of the circumstances test requires courts to recognize that the whole is sometimes greater *152 than the sum of its parts — a truism I find applicable in the instant case — and for the reasons discussed in the magistrate judge’s Report and Recommendation, see Johnson, 2010 WL 2901852, adopted by the district court, I would find that reasonable suspicion existed to detain Johnson after he was stopped for a routine traffic violation and would deny Johnson’s motion to suppress. Accordingly, I respectfully dissent.[19]

. After watching the video from Officer Dug-gan's patrol vehicle, the majority holds that the district court clearly erred in finding that Johnson had assumed a “bladed” stance. For the reasons discussed infra, I would conclude that even in the absence of this factor, Officer Duggan had reasonable suspicion to detain Johnson.

. The majority correctly notes that Johnson has waived any challenge to the scope and duration of Officer Duggan's detention. Were the issue to be reached, however, I would find no Fourth Amendment violation.